839 So.2d 348 (2003)
STATE of Louisiana
v.
Ronald J. WILLIAMS.
No. 02-KA-852.
Court of Appeal of Louisiana, Fifth Circuit.
January 28, 2003.
*349 Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Alison Wallis, Assistant District Attorneys, Gretna, LA, for Appellee.
Martin E. Regan, Jr., Kris A. Moe, New Orleans, LA, for Appellant.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.
Defendant, Ronald J. Williams, appeals his conviction for attempted armed robbery. For the following reasons, we affirm.
*350 On September 7, 2001, defendant, Ronald J. Williams, was charged by bill of information with the July 26, 2001 attempted armed robbery of Murphy Noel.[1] Williams was arraigned on September 10, 2001, and entered a not guilty plea. Williams filed pre-trial motions on September 13, 2001, including Motions to Suppress Identification, Confession, and Evidence. A hearing on the motions to suppress was held on December 12, 2001 and the motions were denied. The two-day trial was held December 18, 2001 and December 19, 2001. The 12-person jury unanimously found Williams guilty as charged.
On January 24, 2002, Williams was sentenced to seven years of imprisonment at hard labor without benefit of parole, probation or suspension of sentence with credit for time served. Also on January 24, 2002 Williams filed a written motion for appeal, which was granted that day by the trial court judge.
On January 25, 2002, the State filed a multiple offender bill wherein it alleged Williams was a second-felony offender under the Habitual Offender Law.[2] Williams thereafter denied the allegations of the multiple bill. On February 27, 2002, Williams filed a Motion to Quash the multiple bill, wherein he attacked the predicate conviction being utilized by the State in the multiple bill.
On March 21, 2002, a hearing was held on the multiple bill and the court found Williams to be a second felony offender. The court vacated defendant's original sentence and imposed a multiple offender sentence of 25 years of imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
Williams appeals his conviction and sentence relying on two assignments of error.
On July 26, 2001, at approximately 11:30 a.m., while on routine patrol in the Woodmere area of Harvey, Deputy Rainey Lyons of the Jefferson Parish Sheriff's Office drove past the intersection of Post Boulevard near Belaire Street. Officer Lyons observed three black males at that location. One of the men, a juvenile known as M.N., was on the ground holding his mouth and his shirt was bloodied. Standing over M.N. and facing him were two men later identified as Ronald Williams and Lavelle Simpson. The two men turned and headed south on Belaire Street, away from M.N., as the marked unit driven by Officer Lyons was observed by Williams and Simpson. Officer Lyons drove to where M.N. was located and interviewed him concerning the incident. It was discovered that while M.N. was waiting for a bus to go to work, Williams and Simpson accosted him. According to M.N., Simpson punched him in the mouth and both men demanded money. The victim told the attackers that he did not have any money. Williams pulled out a gun, pointed it in the victim's face and again demanded money, telling the victim, "We ain't playing with you." The gun was described as a small chrome gun with a black handle.
Officer Lyons canvassed the neighborhood near the crime scene for the gun. The gun was found under the bushes, about two doors from the crime scene The firearm was loaded with a bullet in the chamber and the trigger was cocked.
Prior to interviewing the victim, Officer Lyons had watched the two suspects as they walked at a fast pace up Belaire Street. Officer Lyons watched them for a *351 matter of 15 to 20 seconds and then lost sight of them. After the investigation, the suspects were stopped, about two doors down the street from where this incident occurred. Williams and Simpson were apprehended on Belaire Street, placed under arrest, handcuffed, advised of their rights and placed in the back of the patrol unit for transport to the lockup. They were transported by Jefferson Parish Deputy Mike Burgess. At the time of their arrest, Simpson had a cut on the knuckle of his right ring finger.
The crime scene unit was summoned and they took photographs of the crime scene, gun and the defendant's finger that had been cut.
M.N.'s mother took him for medical treatment. He received five stitches to repair the cut to his mouth.
Following their booking, both defendants were transported to the Investigation Bureau under the direction of Sergeant Scott Fontaine, supervisor of the Armed Robbery Division. Each defendant gave a taped statement, both of which were later admitted as evidence and played for the jury. Defendant Simpson turned State's evidence, in return for a reduced charge in this case and consideration in an unrelated case. Simpson testified against Williams at the trial. He identified Williams as the one who pointed the gun at M.N. He also identified the firearm used in the robbery. Simpson admitted he also hit the victim in the mouth and demanded money from the victim.
At the trial, Williams denied that an armed robbery occurred. Rather, he said that Simpson walked up to M.N. and punched him in the mouth because Simpson recognized the victim as someone Simpson had previously had a fight with on Canal Street. Williams admitted having a gun in his right pocket that day but stated that he merely carried it for "protection." He explained that a man who lived a few doors from him, Wendell Harris, and "his whole family" had been giving him trouble and that Harris had tried to kill him. Williams stated that he had called the police a number of times because of this.
On appeal, Williams first contends the trial court erred in denying his request for a police report. He reasons that the report would have bolstered his trial testimony and substantiated his reasons for being in possession of a firearm: that he carried a gun for his own protection, that he had been in a neighborhood dispute and had been threatened, and that he had reported the altercation to police and had since carried the firearm for his safety.
The State responds that no error was committed and contends that the subpoena was a part of a "fishing expedition." In the alternative, the State argues that even if error was committed, there was no prejudice because Williams testified at trial that the weapon was for self-defense. Finally, the State argues that the reason for Williams' possession of a firearm was irrelevant to his defense.
The record reflects a pretrial pro se motion entitled "Motion and Order for Production of the Original Police/Sheriff Incident Report of the Investigation" filed by the Williams in the record. The motion requests the initial police report but gives neither a name nor item number. Defendant's pro se motion asks for a "subpoena duces tecum" directed to the sheriff or district attorney, ordering them to produce the initial police report "bearing Item Number____." This motion was denied by the trial judge on September 27, 2001, with the notation "Defendant has counsel of record."
Thereafter, on December 14, 2001, defense counsel filed a "Motion for Issuance *352 of Instantier Subpoena Duces Tecum." In this document he seeks the following:
To issue an instanter subpoena duces tecum to the Custodian of Records for the Jefferson Parish Sheriff's Office 1233 West Bank Expressway, Harvey, LA, 70058 to produce at the trial in these proceedings on December 17, 2001 and any other date to which this trial may be continued or recessed, the police report/incident report relative to Item No. H-5486-00.
The trial judge denied the motion on December 14, 2001, with the following reasons: "Unable to determine if the defendant is entitled to the entire report on the facts set forth before the court."
On the first day of trial, defendant, in a bench conference, told the judge that he wished to re-urge his motion for instanter subpoena duces tecum that had previously been denied by the judge for failure to make a sufficient showing. The following discourse occurred:
Mr. Creech (Defense):
In that motion for issuance of an instanter subpoena duces tecum I requested a police report in connection with a certain item number, a Jefferson Parish Sheriff's Office item number. That item number, I mean, that police report relates to an ongoing dispute between Mr. Williams and a man that lived, a family that lived a few doors down from him. I believe that police report may be relevant to my case as it would give some reason why Mr. Williams who gave a statement in this matter and said he had a gun for protection, why he might need that pistol.
The Court:
The police report?
Mr. Creech:
It's a totally extraneous matter, Judge.
The Court:
Let me tell you the problem. You've identified, of course, the request which you submitted to the Court which requests a police report under an item number. There is no name of any individual contained within the request. There are no reasons set forth why counsel is asking the Court to sign its signature on the document. There is no indication that the matter, the police report is subject of an incident which has been completed and the Court takes notice of the jurisprudence and the laws of this state. It does not entitle Counsel to a police report. Counsel is entitled to the initial report, but not the entire investigative file of the police department, so I'm not able to determine, Counsel, I've not heard you say that matter is concluded and not an open investigation. And until such time as that is placed before the Court to satisfy it that an ongoing investigation would not be jeopardized resulting from this subpoena, I'm not able to grant your request.
Mr. Creech:
Note my objection.
The Court:
So you're not aware of whether
Mr. Creech:
I do not know.
The Court:
Have you inquired?
Mr. Creech:
I have, but I don't know the answer to that question. Thank you, Judge.
At trial, Williams testified that no armed robbery had occurred. In explaining the reason why he was carrying a gun, Williams stated that it was for his "protection." He testified that a neighbor, Wendall Harris, had tried to kill him. He stated that he had trouble with the entire Harris family and had called the police *353 several times because of this. He testified that he threw the gun away because, at the time of this incident, he was on probation for another offense and he did not want to get into "trouble."
Defendant argues that he is entitled to the police report and cites the Public Records Statute, LSA-R.S. 44:3.
The initial police report is a public record, under the Public Records Act.[3] In State v. Shropshire,[4] the Louisiana Supreme Court for the first time found that the initial report of an investigating officer is a public record, under the Louisiana Public Records Act, and is discoverable by the defendant in a criminal prosecution.[5]
In order to secure a public record under the Louisiana Public Records Act, one must follow the procedure set forth in LSA-R.S. 44:31 et seq. of the Act. In this case, there is no indication that Williams followed the procedures set forth in the Act for securing a public document. Rather, Williams first filed a pro se motion and then applied for a subpoena duces tecum for the production of the police report. Both pleadings appear to be defective.
The method of securing documents in a criminal prosecution, which are not otherwise discoverable from the State, is by use of a subpoena duces tecum. In this case, the document was sought for use at trial. The law concerning this discovery device is set for in LSA-C.Cr.P. art. 732, which provides, as follows:
A subpoena may order a person to produce at the trial or hearing, books, papers, documents or any other tangible things in his possession or under his control, if a reasonable accurate description thereof is given, but the court shall vacate or modify the subpoena if it is unreasonable or oppressive.
(Emphasis added).
The pro se motion, filed by Williams, even if considered a subpoena duces tecum request, was deficient. Specifically, the pro se motion provides no description of the police report being requested. It, therefore, fails to give an accurate description of the document sought by defendant, as required by LSA-C.Cr.P. art. 732.
Moreover, the subpoena request filed by defense counsel likewise does not appear to comply with the dictates of LSA-C.Cr.P. art. 732. Although the subpoena request listed an alleged number for the police report, the request gave no other clarifying information, in terms of location, date or name(s) of the subject(s) involved. Under these circumstances, the subpoena did not comply with the requirements of LSA-C.Cr.P. art. 732, that the description be "reasonably accurate."
Additionally, although a defendant is generally entitled to the initial police report, State v. Shropshire, supra, he is generally not entitled to any supplemental or follow-up report.[6] In this case, defendant's subpoena request failed to specify that he only sought the initial police report.
Therefore, because the subpoena was not reasonably accurate in the description of the document requested, we find that the trial judge did not err in denying the request. Even assuming for *354 the sake of argument that the trial judge erred in refusing the defendant's request, we find that no prejudice resulted and the error was harmless. Williams testified at trial about the altercation with his neighbor and that this was the reason he was in possession of a firearm on the date of this incident.
For these reasons, this assignment is without merit.
Williams next contends that the motion to quash the multiple bill in this case should have been granted, alleging that the guilty plea in the predicate conviction was defective. In this regard, he testified at the hearing on the multiple bill that he did not read the Waiver of Rights, but merely signed it in order that he could get out of jail. Williams reasons, therefore, that the trial judge in the present case could not just assume defendant was advised of his rights and was properly represented.
The State replies that Williams failed to meet his burden under Shelton in establishing a defect in the underlying guilty plea.
To prove a defendant is a habitual offender, the State must initially prove the prior felony conviction(s) and that defendant is the same person who was convicted of the prior felony, as well as that the predicate conviction falls within the applicable time period prescribed by the Multiple Offender Statute.[7] In State v. Shelton,[8] the Louisiana Supreme Court discussed the State's burden of proof in a multiple offender proceeding when the evidence consists of a conviction based upon a prior guilty plea. In Shelton, supra, the Court stated the following rules:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of his prior guilty plea and that the defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving the defendant's prior guilty plea was informed and voluntary, and made with an articulated Boykin rights.[9]
(Footnotes omitted; emphasis added).
In this case, Williams filed a Motion to Quash the multiple bill, wherein he alleged (1) the defendant was not properly Boykinized; (2) the defendant was not the same person as in the predicate offense; and (3) the documentary evidence offered by the State was inadequate to support a multiple offender adjudication.
A hearing was held during which the defense told the court that a Motion to Quash had been filed because Williams was not properly Boykinized before he pled guilty to the underlying offense. He also advised the court that Williams would testify that his counsel in the prior proceedings did not explain defendant his rights *355 and defendant merely signed the Waiver form to get out on probation. The following discussion occurred:
The Court:
Mr. Creech, you understand the Boykin is the colloquy between Court and defendant, not between counsel and defendant.
Mr. Creech (Defense Counsel):
Yes, I do, Judge, but I think it's part and parcel because, as a practical matter, Judge, the trial court can only do so much to insure the defendant understands his rights. That's why he has an attorney. The attorney hasto discuss that.
The Court:
I understand that but I don't find that you have set forth in your Motion to Quash, which sounds like a post-conviction issue, any misconduct on the part of his lawyer. Your motion makes reference to `properly Boykinized' and that is a conduct of the judge who has a conversation with the defendant. And, therefore, I will not here [sic] arguments concerning matters between the lawyer and his client unless that has been properly set forth in the motion which I do not find it to be so. Therefore, I will not hear that argument.
Mr. Creech:
The balance of the Motion to Quash, Your Honor, we will submit. I ask the Court to examine the certified documents offered by the State in connection with the plea.
. . . .
The Court:
All right. At the request of counsel, I'm going to take up the Motion to Quash at the same time that the hearing takes place and I will rule upon the motion at the same time as the Court makes a finding on the merits of the multiple bill.
At the hearing on the multiple bill, the State presented Deshotel Young, a probation officer who had formerly supervised Williams when he was on probation for a conviction in Orleans Parish before Judge Hunter, wherein Williams pled guilty to possession of stolen good (auto) in an amount over $500. Ms. Young identified Williams as the person she formerly supervised. In conjunction with this testimony the State offered a pen pack, as State's Exhibit No. 1, in globo. The pen pack consisted of a certified copy of the bill of information, a certified copy of the minute entry which indicated that defendant had received probation for the conviction and a certified copy of the Boykin form.
Thereafter, Ronald Williams testified. He admitted pleading guilty, in Orleans Parish to possession of stolen property valued in excess of five hundred dollars. He admitted he was represented by counsel, but alleged that his attorney did not explain his Boykin rights to him. Williams stated that he did not know what he was doing when he pleaded guilty. Williams further stated that he was told that if he signed the forms he would get a year probation, "roll out of jail" and go home. Williams also testified that if he had known he was going to have a conviction, he would not have signed the waiver form.
On cross-examination, Williams admitted that the underlying offense was not his first. He also admitted that he knows how to read but did not read the form he was given to sign. He identified the signature and initials on the waiver form as being his.
The matter was submitted and the Court made the following ruling:
The Court:

*356 All right. The Court has heard the evidence in this case, has reviewed the exhibit which is submitted as State's Exhibit 1, as the witnesses who have testified in this matter, both for the State and the defense.
The court takes notice of State's Exhibit 1, which is a three-page document, one of which contains the Bill of Information concerning the offense in Division K, under case number 419-530.
The court finds that pursuant to the jurisprudence of this case there is a valid minute entry which contains information indicating a colloquy between the Court and the defendant concerning his various rights.
The document indicated the defendant was informed of his constitutional rights. The defendant informed the Court that he understood his rights but wished to waive them. The Court accepts the guilty plea and the Court sentenced defendant and so forth.
The Court further takes notice of the Waiver of Constitutional Rights which is signed by the defendant, by his counsel, and by the presiding judge. Included among which is signed by the defendant, by his counsel, and by the presiding judge. Included among which is contained various rights required to be provided to the defendant by the law, as well as the following notation executed by the defendant and I quote: `I understand all the possible legal consequences of pleading guilty and I wish to plead guilty at this time because I am in fact guilty of this crime." It is therefore further followed: This plea of guilty is accepted by the court as having been knowingly, intelligently and voluntarily made.
These documents are signed by all of the parties for which the Court states: There is no information provided to this Court except for the self-serving testimony of the defendant concerning conduct between he and his lawyer. The record presented before the Court supports the finding that there was colloquy between the court and the defendant for which the defendant informed the Court that he understood his rights; he made a knowing, intelligent, free and voluntary exercise of those rights pursuant to the jurisprudence of this lawof the law concerning multiple bill hearings and rights of defendant. That satisfies the requirements whereby the Court could accept the guilty plea and the court so did.
I, therefore, find the comments made by the defendant concerning his lawyer to be without merit and unfounded and I find them to be self-serving. I reject those comments that he did not understand his rights. The record simply does not support that.
Accordingly, I find that the State has sustained its burden of proof concerning this matter and, therefore, under the requirements of Revised Statute 15:529.1, I find the defendant to be a second felony offender....
Under the facts of this case, Williams denied the allegations of the multiple bill and attacked the predicate conviction by filing a motion to quash the multiple bill.
Thereafter, the burden under Shelton shifted to the State. The State met its burden of proof, by presenting the testimony of the probation officer for the underlying offense and a pen pack that consisted of certified copies of the bill of information, Waiver of Rights form, and minute entry for the predicate offense. Under Shelton, the burden then shifted to the defendant.
Although Williams attempted through his testimony to demonstrate an unknowing and involuntary guilty plea, the testimony *357 was not accepted by the trial judge as being credible. Under these circumstance, we find that Williams failed to meet his burden under Shelton. The trial judge correctly found that the State met its burden of proving defendant was a second-felony offender under the Habitual Offender Statute, LSA-R.S. 15:529.1(A)(2)(a).
For the reasons stated, this assignment of error is without merit.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux,[10] and State v. Weiland.[11] We note one error patent in this case.
Defendant filed a premature motion for appeal after he was convicted and sentenced for the offense but before the multiple bill adjudication. However, that procedural defect was cured by the subsequent sentencing as a multiple offender.[12]
Accordingly, based on the foregoing, the defendant's conviction is affirmed.
AFFIRMED.
NOTES
[1] LSA-R.S. 14:27:64.
[2] LSA-R.S. 15:529.1(A)(1)(a).
[3] LSA-R.S. 44:3(4)(a).
[4] 471 So.2d 707, 709 (La.1985).
[5] LSA-R.S. 44:3. See also, State v. Jackson, 608 So.2d 949, 957 (La.1992).
[6] State v. Silva, 96-0407, p. 8 (La.App. 4 Cir. 9/3/97), 699 So.2d 487, 490, writ denied, 97-2578, 709 So.2d 704 (La.1/30/98).
[7] LSA-R.S. 15:529.1(C); State v. Minis, 00-1507 (La.App. 5 Cir. 12/26/01), 806 So.2d 760, 766.
[8] 621 So.2d 769 (La.1993).
[9] 621 So.2d at 779-780
[10] 312 So.2d 337 (La.1975).
[11] 556 So.2d 175 (La.App. 5 Cir.1990).
[12] State v. Balser, 96-443 (La.App. 5 Cir. 11/14/96), 694 So.2d 351.