920 So.2d 287 (2005)
STATE of Louisiana
v.
Percy M. TAYLOR.
No. 05-KA-280.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2005.
*289 Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Anne Wallis  Appellate Counsel, Thomas Block  Trial Counsel, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, Gretna, Louisiana, for Appellee, State of Louisiana.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, Louisiana, for Appellant, Percy Taylor.
Percy M. Taylor, Angola, Louisiana, Appellant.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
This is defendant's second appeal. In this appeal, defendant seeks review of his multiple offender adjudication and enhanced sentence. On September 24, 2003, defendant was convicted of distribution of counterfeit cocaine, in violation of La. R.S. 40:971.1. Defendant was subsequently sentenced to three years at hard labor. On October 15, 2003, defendant appealed his conviction and sentence.
In his first appeal, which dealt solely with his underlying conviction and sentence, this Court affirmed the conviction and sentence. State v. Taylor, 04-200 (La. App. 5 Cir. 10/26/04), 888 So.2d 272. The Louisiana Supreme Court subsequently denied writs. State v. Taylor, 04-3162 (La.4/1/05), 897 So.2d 601.
In October of 2003, after defendant's original sentence was imposed but before his first appeal was heard, the State filed a bill of information alleging that defendant was a fourth felony offender with prior convictions for simple robbery in 1985, for possession of heroin in 1989, and for distribution of cocaine in 1995.[1] Defendant filed written objections to the multiple bill of information. On May 20, 2004, the trial court held a multiple bill hearing. After the hearing, the trial court requested post-trial memoranda and took the matter under advisement.
On October 29, 2004, the trial court found defendant to be a fourth felony offender, vacated his underlying sentence, and imposed an enhanced sentence of life imprisonment without the benefit of parole, probation, or suspension of sentence. In this appeal, defendant challenges his adjudication as a fourth felony offender and his life sentence.

*290 Facts

This Court has previously recited the facts of defendant's underlying conviction as follows:
On July 16, 2001, at approximately 2:00 p.m., Agent Robin Jones was working undercover in the area of the Acre Road Housing Project in Marrero attempting to purchase narcotics from "anyone that was willing to sell it." Agent Jones stopped at a store on Acre Road and met a man later identified as the defendant. Agent Jones asked the defendant for "two 20s," street slang for two rocks of crack cocaine. The defendant stated he wanted the money up front and requested a ride from Agent Jones. Agent Jones refused both requests. The defendant then instructed Agent Jones to meet him at a different location approximately two blocks away. When Agent Jones met the defendant at the location, the defendant directed her to Betty Street. Once on Betty Street, Agent Jones handed the defendant the money and the defendant gave her two off-white rock-like objects. A field test performed on the objects immediately after the transaction was negative for cocaine.
The entire transaction was captured on videotape. The videotape was reviewed by Sergeant Joe Williams who recognized the defendant as the perpetrator of the offense. A photographic lineup was prepared and shown to Agent Jones who positively identified the defendant as the person who sold her the alleged cocaine.
State v. Taylor, 04-200 (La.App. 5 Cir. 10/26/04), 888 So.2d 272, 275, writ denied, 04-3162 (La.4/1/05), 897 So.2d 601.
On appeal, defendant presents three counseled assignments of error: first, the trial court erred in finding Mr. Taylor to be a fourth-felony offender; second, the trial court erred in granting the State's Motion to Quash; and third, the trial court imposed an excessive sentence. Defendant also presents three pro se assignments of error: first, the district court erred in not exercising a downward departure when sentencing appellant as a fourth felony offender to life imprisonment; second, appellant was denied his constitutional right to confront witness against him when the district court denied cross examination of the confidential informant's bias and corruption which appellant had knowledge of, in the predicate conviction case number 88-4180; third, the district court abused it's [sic] discretion finding appellant a fourth felony offender and sentencing him to life using a prior conviction where the police nor the state used adequate procedure to determine the reliability of the informant in the predicate conviction case number 88-4180.
In his first counseled assignment of error, defendant argues that the trial court erred in finding Mr. Taylor to be a fourth-felony offender. Defendant specifically argues that the trial court erred in finding that he was a fourth felony offender because the trial court relied on a predicate conviction obtained from a guilty plea in case number 88-4180, which was not free and voluntary.
In a habitual offender proceeding, where a prior conviction resulted from a guilty plea, the State must show that the defendant was advised of his constitutional rights and that he knowingly waived those rights prior to the guilty plea as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). State v. Shelton, 621 So.2d 769, 779 (La.1993). Further, when a defendant denies the allegations in a habitual offender bill of information, the State must prove the existence of the predicate guilty plea and that the *291 defendant was represented by counsel at the time he entered his plea. Id. Once the State meets this burden, defendant must produce some affirmative evidence of an infringement of his rights or of a procedural irregularity. Id. If the defendant is able to meet his burden, the State must prove the constitutionality of the plea. Id.
To prove the constitutionality of the plea, the State must produce either a "perfect" transcript of the Boykin colloquy between the defendant and the trial judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an "imperfect" transcript. Id. at 780. A "perfect" transcript of the guilty plea reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. Id. If anything less than a "perfect" transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant's prior guilty plea was informed and voluntary. Id.
In this case, defendant denied the allegations of the multiple offender bill of information and filed his objections in writing. Under Shelton, the burden then fell on the State to prove the existence of a counseled guilty plea.
Here, the prosecution offered five exhibits at the multiple offender hearing. Exhibit S-1 consisted of certified copies of the bill of information filed by the Jefferson Parish District Attorney's Office in case number 85-1880 in which defendant was initially charged with purse snatching and later amended to simple robbery; the well-executed waiver of rights/guilty plea form signed by defendant, his attorney, and the trial judge on December 16, 1985; the minute entry dated December 16, 1985 reflecting defendant's counseled guilty plea; and the commitment reflecting defendant's two-year sentence. Exhibit S-1A contained another certified copy of the bill of information in case number 85-1880; the commitment; and the Jefferson Parish Sheriff's Office arrest register and fingerprint card connected with the charged offense.
Exhibit S-2 contained certified copies of the Jefferson Parish grand jury indictment in case number 88-4180 reflecting that defendant was indicted for distribution of heroin, which was later amended to possession of heroin; the well-executed waiver of rights/guilty plea form signed by the defendant, his attorney, and the trial judge on April 14, 1989; the minute entry dated April 14, 1989 reflecting that defendant tendered a counseled guilty plea; the hard labor commitment reflecting defendant's five-year sentence; and the Jefferson Parish Sheriff's Office arrest register and fingerprint card connected with the charged offense. Exhibit S-3 consisted of certified copies of the bill of information filed by the Jefferson Parish District Attorney's Office charging defendant with distribution of cocaine in case number 95-4675 with attached fingerprints; the well-executed waiver of rights/guilty plea form signed by defendant, his attorney, and the trial judge on December 14, 1995; the minute entry dated December 14, 1995 reflecting defendant's counseled guilty plea and ten-year sentence; and the Jefferson Parish Sheriff's Office arrest register and fingerprint card connected with the charged offense.
In addition, the State offered the testimony of defendant's parole/probation officer, Lisa Maise, who identified defendant as the person that she supervised when he was released on parole in connection with case numbers 88-4180 and 95-4675. The State also offered the testimony of Lieutenant Patricia Adams, who was accepted *292 after stipulation as an expert in fingerprint analysis. Lieutenant Adams obtained the defendant's fingerprints in court at the outset of the multiple offender proceeding, which she identified as a match to fingerprints on the certified fingerprints cards attached to each of defendant's predicate convictions introduced in Exhibits S-1 through S-3. The State introduced the fingerprint card that Lt. Adams used to take defendant's fingerprints in court as Exhibit S-4. Here, the State, through this evidence, met its initial burden of proving the existence of three counseled guilty pleas by the defendant, which could be used as predicates to enhance the sentence for an underlying conviction.
Under Shelton, the burden then shifted to defendant to prove an infringement on his rights or an irregularity in the taking of the pleas in the predicate convictions. Defendant testified at the multiple bill hearing that he was coerced into pleading guilty in case number 88-4180. To substantiate his claim, defendant introduced the transcript from that plea colloquy. Defendant focused on his response to the trial judge's query on whether he was forced to plead guilty, which was, "Yes  no, sir."
Defendant argued at the hearing that the dashes in the transcript reflect an interruption in the proceedings, during which the prosecutor threatened to plant enough cocaine on him to insure a life sentence, if defendant refused to plead guilty. Defendant further stated that, around the time that he pled guilty in that case, he was being sexually assaulted by a Jefferson Parish Sheriff's deputy while he was housed at the Jefferson Parish Correctional Center.
The trial judge took the matter under advisement, asked for post-trial memoranda, and reviewed the evidence. At a subsequent hearing, the trial judge stated:
All right. The court finds that the State has, in fact, sustained its burden of proof in connection with the multiple bill. I note that there have been some issues raised by the defense as to whether or not there was some coercion concerning the prior pleas in another division of this court. I have reviewed those documents and delayed this matter so that I could consider that fully and I have done so. And while I note that they are matters raised by objection, I do not find that they are supported by the evidence that was presented before me and for that reason in noting that the evidence [that] was presented supports a finding that the defendant is a fourth felony offender I so find him to be pursuant to Revised Statute 15:529.1.
On appeal, defendant contends that the trial court erred in its determination. Our review, however, reveals no error in the trial court's ruling. Here, the State presented sufficient evidence to prove the existence of three counseled guilty pleas. The burden then shifted to defendant to produce affirmative evidence of a procedural irregularity or a violation of his rights in the taking of the predicate guilty plea in case number 88-4180. Again, our review supports the trial court's conclusion that defendant's testimony was not credible.
In particular, we note that defendant testified to specific details surrounding the alleged coercion of his 1988 guilty plea. On cross-examination, however, defendant denied the existence of his other convictions. Moreover, he denied that his signature was on the other guilty plea forms, he denied knowing his own social security number, he claimed he did not recognize the person claiming to be his parole officer who testified during the proceeding, he denied having a twelfth-grade education, *293 he did not recall being represented by counsel in one of his predicate pleas, he refused to admit he initialed one of the waiver of rights form, and he did not remember pleading guilty to a simple robbery charge.
In conclusion, we find that his testimony was insufficient to produce affirmative evidence of a violation of his rights in connection with his 1988 guilty plea. State v. Williams, 02-852 (La.App. 5 Cir. 1/28/03), 839 So.2d 348, writ denied, 03-0596 (La.6/6/03), 845 So.2d 1089; State v. Manson, 01-159 (La.App. 5 Cir. 6/27/01), 791 So.2d 749. This assignment of error lacks merit.
Because defendant's second and third pro se assignments of error also attack his predicate conviction for possession of heroin in case number 88-4180, we will address those assignments at this juncture. In his second pro se assignment of error, defendant argues that he was denied his constitutional right to confront witnesses against him when the "district court denied cross examination of the confidential informant's bias and corruption which appellant had knowledge of, in the predicate conviction case number 88-4180." In his third pro se assignment of error, defendant argues that the district court abused its discretion in finding appellant a fourth felony offender and sentencing him to life using a prior conviction where the police nor the State used "adequate procedure to determine the reliability of the informant in the predicate conviction case number 88-4180."
Specifically, by these assignments, defendant claims that he was set up in the drug deal by a biased and corrupt confidential informant, Robert/Bobby Melancon. He asserts that he was unable to cross-examine the confidential informant, which adversely affected his rights leading to his guilty plea. He contends the trial court erred during the multiple bill proceeding in using this predicate conviction to enhance his underlying sentence without inquiring whether the State followed adequate procedures to determine the reliability of the confidential informant used in case number 88-4180.
As discussed previously, once the State proves the existence of the predicate pleas and that defendant was represented by counsel during each plea, the burden shifts to the defendant to show by affirmative evidence an infringement on his rights in the taking of the plea. State v. Shelton, supra. During the multiple bill hearing, defendant testified that he was set up in case number 88-4180. He stated that he was forced to plead guilty because the trial judge failed to give him the opportunity to face his accuser, the confidential informant, and present his witnesses.
The State then proceeded to cross-examine defendant on the issue of whether he was given the opportunity to confront his accuser and present his witnesses at the proceedings in case number 88-4180. The State referenced the transcript of the plea colloquy in that case number, which showed that the trial judge stated that he would give defendant the opportunity to present eight witnesses in connection with defendant's motion to disclose the identity of the confidential informant.
The transcript further reflects that, when the hearing resumed after lunch, defense counsel waived all pending motions and defendant tendered his guilty plea. Thereafter, the trial judge confirmed with defendant that his attorney had specifically explained his right to a trial and right to confront his accusers and that defendant understood his rights. The trial judge then proceeded to explain to defendant he had a right to a jury trial at which he could confront his accusers and present witnesses. Defendant stated he *294 understood that he was waiving those rights by entering a guilty plea.
Here, we again find that defendant's testimony was insufficient to produce affirmative evidence of a violation of his rights in connection with his 1988 guilty plea. These pro se assignments of error lack merit.
In his second counseled assignment of error, defendant claims that the trial court erred in granting the state's Motion to Quash his request for a subpoena duces tecum, in which he sought the arrest and conviction record of Bobby/Robert Melancon and/or Bobby/Robert Scott. He alleges that the documents he sought would have proven the invalidity of his plea in case number 88-4180. Defendant contends La.C.Cr.P. art. 731 mandates that the trial court to issue a subpoena unless it is unreasonable or oppressive. Defendant asserts the trial court never made this determination but rather denied the request for a subpoena on the basis it was moot because the multiple bill hearing had already been heard and defendant failed to file a motion to reopen the hearing prior to submitting the request for subpoenas. Defendant maintains he filed a request for the subpoenas prior to the multiple bill hearing but his request was not ruled upon prior to the hearing.
The State responds that although the trial court never expressly made the determination that defendant's request for subpoenas was unreasonable or oppressive, the trial court indicated that was the case. The State further argues defendant's rights were not affected by the quashing of the subpoenas because the information defendant sought did not prove his rights were violated in the 1989 predicate plea.
On April 20, 2004, one month prior to the multiple bill hearing, defendant filed a pro se motion for a subpoena seeking, among other things, the records of Bobby Melancon/Robert Melancon/Bobby Scott. On May 14, 2004, the trial court denied the motion explaining that the information sought could be obtained by writing the Clerk of Court for Jefferson Parish and the Department of Corrections.
On May 17, 2004, defendant filed a second pro se request for a subpoena seeking the same information he originally sought in his first request for a subpoena. At the May 20, 2004 multiple bill hearing, neither defendant nor defense counsel mentioned defendant's pro se request for subpoenas. At the conclusion of the hearing, the trial judge requested post-trial memorandums.
On May 26, 2004, after the multiple bill hearing, the trial court ruled on defendant's second pro se request for a subpoena stating that defendant's request had been previously denied on May 14, 2004. Defendant filed his post-trial memorandum on June 11, 2004. In his memorandum, defendant simply noted he had made numerous unsuccessful attempts to obtain documents related to his guilty plea in case number 88-4180.
On June 24, 2004, defense counsel filed two requests for issuance of subpoenas, which were granted on June 29, 2004. That same day, the State filed a motion to quash the subpoenas.
At the hearing on the State's Motion to Quash, defense counsel argued that he was seeking the criminal record and a photograph of Robert Melancon and/or Robert Scott because information about Melancon/Scott was elicited during the multiple bill hearing. Specifically, he maintained defendant had testified that Robert Melancon/Scott was working as an informant and wrongly accused defendant. Defense counsel explained that he requested the subpoena to obtain the criminal records and a photograph of Melancon/Scott, which may substantiate defendant's *295 claim that he was wrongfully accused and then pled guilty to an offense he did not commit.
The State argued that defense requests for subpoenas were moot because, first, the evidence portion of the multiple offender hearing was over and, second, the information sought was not relevant to whether the State had proven defendant was a fourth felony offender. In granting the motion to quash, the trial court agreed with the State and reasoned that any documents obtained as a result of the subpoenas would have no bearing on the multiple bill hearing because the hearing had concluded and the submission of evidence in the matter had ended even though the matter was under advisement. The trial court further noted that defendant had not filed a motion to reopen the multiple bill hearing. The trial court also found the requests for subpoenas were premature because it presupposed an adverse ruling on defendant's multiple offender status. Approximately two and a half months later, on October 29, 2004, the trial court found that the State had submitted sufficient evidence to prove that defendant was a fourth felony offender.
La.C.Cr.P. art. 732 provides the authority for the issuance of a subpoena duces tecum as follows:
A subpoena may order a person to produce at the trial or hearing, books, papers, documents, or any other tangible things in his possession or under his control, if a reasonably accurate description thereof is given; but the court shall vacate or modify the subpoena if it is unreasonable or oppressive.
This article does not authorize the disclosure of documents for discovery purposes or as part of a "fishing expedition," but rather provides for the production of the documents at a "trial or hearing." State v. Johnson, 00-0680 (La.App. 1 Cir. 12/22/00), 775 So.2d 670, 676, writ denied, 02-1368 (La.5/30/03), 845 So.2d 1066. The Louisiana Supreme Court has stated that while the Code of Criminal Procedure provides no time limit as to when applications for subpoenas must be filed, "[p]rudence would dictate ... that when the need for documents exists and is known prior to trial that counsel file his application for the issuance of a subpoena at least prior to the commencement of trial." State v. Moore, 344 So.2d 973, 976 (La.1977).
First, we note that the requests for subpoenas were not filed by defense counsel before defendant's multiple bill hearing. Further, we cannot see that the requested information, i.e., the criminal record and photograph of Robert Melancon/Scott, would have substantiated defendant's claim that his guilty plea in case number 88-4180 was coerced and, thus, could not be used to enhance his underlying sentence. Moreover, defendant has not demonstrated that he was prejudiced by the trial court's denial of his requests for subpoenas. See, State v. Moore, supra at 976 (the failure of the trial judge to issue a subpoena was not reversible error because no prejudice was demonstrated). We cannot say that the trial court's granting of the State's motion to quash constitutes reversible error. This assignment of error lacks merit.
In his final counseled and his first pro se assignments of error, defendant argues that the trial court imposed an excessive sentence. By both counseled and pro se assignments of error, defendant argues that his life sentence as a fourth felony offender is excessive especially considering he merely possessed counterfeit drugs. He asserts his crime was not one of violence and, thus, he does not pose a danger to society. He further contends he has a diminished mental capability, evidenced by the initial determination that he was incompetent *296 to proceed in the present case. Defendant also alleges the trial judge failed to articulate his reasons for the sentence as mandated by La.C.Cr.P. art. 894.1.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even when it is within the applicable statutory range, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839.
In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice. The trial judge is afforded wide discretion in determining sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Brown, 04-230 (La. App. 5 Cir. 7/27/04), 880 So.2d 899, 902. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. Id. In reviewing a trial court's sentencing discretion, three factors are considered: the nature of the crime, the nature and background of the offender, and the sentence imposed for similar crimes by the same court and other courts. Id. The reviewing court must keep in mind that maximum sentences should only be imposed on the most egregious offenders. State v. Guajardo, 428 So.2d 468, 473 (La.1983).
Here, the trial judge adjudicated defendant a fourth felony offender based on his underlying conviction for possession of counterfeit cocaine and predicate convictions for distribution of cocaine, possession of heroin, and simple robbery. At sentencing, the trial judge stated:
The court therefore taking notice of Revised Statute 15:529.1 and noting that the defendant has been convicted of the various felony offenses which are set forth in the multiple bill and noting that he is a fourth felon[sic] offender and the requirements of 15:529.1, Subsection A, actually, A, D[sic], II, the court sentences the defendant to life imprisonment without benefit of probation, parole or suspension of sentence.
We note that La. R.S. 15:529.1 does not currently contain Subsection (A)(d)(ii).
We also note that La. R.S. 15:529.1(A)(c)(ii) mandates a life sentence for a fourth felony offender, where the fourth felony and two of the prior felonies are crimes of violence, drug offenses punishable by at least ten years, or any other crime punishable by at least twelve years. Although two of defendant's predicate convictions were for drug offenses, his fourth felony was not a crime of violence, a sex crime, or a drug offense punishable by more than ten years.[2] Defendant's sentencing range, thus, should have been *297 twenty years to life imprisonment under La. R.S. 15:529.1(A)(1)(c)(i).
Moreover, the trial judge imposed defendant's life sentence without benefit of probation, parole, or suspension of sentence. Under La. R.S. 15:529.1(G), the trial judge should have imposed defendant's sentence without benefit of probation and suspension of sentence, but not parole.
Finally, we note that the trial judge did not articulate reasons for imposing a life sentence. In this case, defendant was initially found incompetent to stand trial for the underlying offense of distribution of counterfeit drugs. Dr. Richard Richoux, an expert in forensic psychiatry, testified that defendant required an antipsychotic medication, and fell within the mildly mentally retarded range.
In State v. Washington, 00-301 (La.App. 5 Cir. 9/27/00), 769 So.2d 1235, writs denied, 00-2971 (La.9/28/01), 798 So.2d 106 and 00-3041 (La.9/28/01), 798 So.2d 108, this Court vacated the defendant's enhanced life sentence on the basis of a mistake of law by the trial court. In Washington, defendant was adjudicated a third felony offender based on his underlying felony conviction for theft between $100 and $500. Defendant alleged his life sentence was excessive. Based on the sentencing transcript, this Court determined that "the trial court sentenced the Defendant under the belief that the sentence was mandatory and under the erroneous believe that he could not deviate from the sentence which he imposed." Id. at 1241. This Court noted that no pre-sentence investigation was ordered, no sentencing hearing was conducted and no reasons for the imposition of the sentence were articulated. As such, this Court concluded that defendant's sentence was imposed on a mistake of law and without consideration of all the facts. This Court vacated the defendant's sentence and remanded the matter for resentencing.
Based on the foregoing, including the erroneous statutory reference, the restriction of parole, the trial judge's comments when sentencing defendant, lack of presentence investigation report, and lack of reasons for imposing the life sentence, we find that this sentence was imposed as a mistake of law and without full consideration of all the facts. Under State v. Washington, we vacate defendant's enhanced sentence and remand this matter for resentencing.
Finally, the record was reviewed for errors patent, according to La.C.Cr.P. art. 920. We found no errors requiring remand in this case. Accordingly, we affirm defendant's adjudication as a fourth felony offender, vacate his enhanced sentence, and remand for resentencing.
ADJUDICATION AFFIRMED, ENHANCED SENTENCE VACATED, REMANDED FOR RESENTENCING.
NOTES
[1] A copy of the multiple offender bill of information was not included in the present appellate record but is included in the appellate record from defendant's first appeal. We have reviewed the pleadings contained in the prior record under U.R.C.A. 2-1.14.
[2] In his underlying conviction, defendant was found guilty of violating La. R.S. 40:971.1, which reads, in pertinent part, "It shall be unlawful for any person to produce, manufacture, distribute, or dispense any substance which is represented to be a controlled dangerous substance and which is an imitation controlled dangerous substance, or any controlled dangerous substance which is a counterfeit controlled dangerous substance." Further, La. R.S. 40:971.1(C), states, "Any person who violates the provisions of this Section shall be imprisoned with or without hard labor for not more than five years, and in addition may be fined not more than five thousand dollars."